IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SINGLE POINT CONSTRUCTION, LLC<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>DICKINSON CAMERON<br>CONSTRUCTION CO., LLC<br><br>　　　　　　　　Defendant. | Civil Action No. 1:08-cv-00412<br>Hon. Rosemary Collyer |

## ANSWER AND COUNTERCLAIM

Defendant Dickinson Cameron Construction Company, LLC ("DCC"), through undersigned counsel, hereby answers the Complaint filed by Single Point Construction, LLC ("Single Point"), and states as follows:

### JURISDICTION & VENUE

1. DCC admits that Single Point seeks jurisdiction pursuant to 28 U.S.C. § 1332 and seeks venue pursuant to 28 U.S.C. § 1391, and further admits that the case arises from a construction project located in the District of Columbia (the "Project"). DCC denies the remainder of the allegations contained in Paragraph 1 of the Complaint.

### THE PARTIES

2. DCC admits upon information and belief that Single Point is a Maryland Limited Liability Company. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 2, and therefore denies the same.

3. Admitted.

## BACKGROUND AND CLAIMS

4. Admitted.

5. DCC admits entering into four Subcontract Agreements with Plaintiff valued at a total of $196,395.00 in April 2007. Single Point was a subcontractor to DCC on the Project. The terms of the Subcontract Agreements are in writing. To the extent the allegations relate to writings, such writings are the best evidence of their contents, and any allegations at variance with it are denied.

6. DCC admits that Single Point worked as a subcontractor on the Project. The remaining allegations in Paragraph 6 of the Complaint are denied.

7. Denied.

8. Denied.

In response to the unnumbered "Wherefore Clause" on page 3 of the Complaint, DCC denies all claims and states that Single Point is not entitled to any judgment or requested relief in its favor.

DCC states that any allegation not specifically admitted in this Answer is deemed denied.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint should be dismissed on the ground that Single Point fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

The Complaint and claims for relief are barred in whole or in part by the failure to follow a condition precedent.

### THIRD DEFENSE

The Complaint and claims for relief are barred by Single Point's breach of the Subcontract Agreements.

### FOURTH DEFENSE

The Complaint and claims for relief are barred because Single Point has been paid in full for its work.

### FIFTH DEFENSE

The Complaint and claims for relief are barred because of the doctrines of set-off and recoupment for the damages incurred by DCC as a result of Single Point's breach of contract.

### SIXTH DEFENSE

The Complaint and claims for relief are barred in whole or in part by waiver.

### SEVENTH DEFENSE

The Complaint and claims for relief are barred in whole or in part by estoppel.

### EIGHTH DEFENSE

The Complaint and claims for relief are barred in whole or in part by the doctrine of accord and satisfaction.

### NINTH DEFENSE

DCC hereby gives notice that it intends to rely upon any other defense that may become available or appear and hereby reserves the right to raise additional defenses.

WHEREFORE, DCC prays that the Complaint be dismissed with prejudice and judgment entered against Single Point.

## DICKINSON CAMERON CONSTRUCTION COMPANY, LLC'S
## COUNTERCLAIM FOR BREACH OF CONTRACT

Defendant / Counter-Plaintiff Dickinson Cameron Construction Company, LLC ("DCC"), hereby asserts the following Counterclaim against Plaintiff / Counter-Defendant, Single Point Construction, LLC ("Single Point"), and states as follows:

1. DCC is a construction general contractor with its principal place of business in Solana Beach, California.

2. Upon information and belief, Single Point, a Maryland Limited Liability Company with its principal place of business in Landover, Maryland, is a construction subcontractor.

3. Zara USA, Inc. contracted with DCC to serve as the general contractor for a construction project at 1025 F Street, Washington, D.C. (the "Project"). In turn, DCC hired Single Point as a subcontractor on the Project and entered into four (4) Subcontractor Agreements with Single Point (the "Subcontractor Agreements" or, together, the "Subcontract"). A true and complete copy of the Subcontract is attached hereto and incorporated by reference as Exhibit A. Single Point also agreed to assume for the work covered by the Subcontractor Agreements "all obligations and responsibilities placed upon [DCC] by the [Contract Documents], which [DCC] has assumed toward the Owner." Exhibit A, Article 1.

4. Single Point agreed to "prosecute his work with promptness and diligence and shall complete the several parts and the whole herein sublet in accordance with progress schedules as may be prepared and issued to [Single Point] at any time by [DCC]." Exhibit A, Article 2. Single Point further agreed that "time is of the essence" and to provide "at all times . . . a sufficient number of workers, materials and equipment at the job, so that, to the satisfaction of [DCC], the work may be carried out and completed as rapidly as required by [DCC]." *Id.*

5. Single Point failed to timely perform and complete its work.

6. Single Point's failure to timely perform and complete the work it agreed to perform under the Subcontract Agreements in breach of the Subcontract Agreements.

7. As a result of Single Point's breach of contract, completion of the Project was delayed.

8. As a result of Single Point's breach of contract, DCC suffered losses and damages in excess of $75,000, exclusive of interests and costs, including: (i) loss of payments of at least $70,000 from the owner to DCC because of Single Point's failures; (ii) increased costs for additional overhead and expenses of at least $55,500 because of Single Point's failures; (iii) increased overtime costs of at least $75,000 arising from Singles Point's failures; (iv) loss of business from a multi-million dollar client because of Single Point's failures; and (v) loss of goodwill and reputation with customers and references because of the delay of the Project related to Single Point's failures.

WHEREFORE, Defendant / Counter-Plaintiff DCC prays that the Court enter judgment against Plaintiff / Counter-Defendant Single Point and in favor of DCC and award damages in the amount of at least $205,000 and any amount for loss of business, goodwill and reputation, plus attorneys fees, interest, costs of the suit, and such other further damages the Court deems appropriate.

Respectfully submitted,


/s/ Michelle L. Schaefer
Michelle L. Schaefer, Esq.
(DC Bar No. 478773)
**DLA Piper US LLP**
500 8th Street, NW
Washington, DC 20004
Ph. (202) 799-4000
Fax (202) 799-5000

Attorney for Defendant / Counter-Plaintiff
Dickinson Cameron Construction Company,
LLC

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of May, 2008, a copy of the foregoing Answer and Counterclaim was sent via electronic filing and first-class mail, postage prepaid to:

> Rena L. Strauss, Esq.
> GRANT, RIFKIN & STRAUSS, PC
> 9210 Corporate Boulevard, Suite 390
> Rockville, MD 20850
>
> Marc S. Zweben, Esq.
> 6178 Oxon Hill Road, Suite 300
> Oxon Hill, MD 20745

>                              /s/ Michelle L. Schaefer
>                              Michelle L. Schaefer

**EXHIBIT A**

10/19/2007 14:27 FAX 202 638 0303    DOUGLAS DEVELOPMENT CORP    ☒008/015

# SUBCONTRACT AGREEMENT

## DICKINSON CAMERON CONSTRUCTION COMPANY, INC.

140 Lomas Santa Fe Drive, Suite 200
Solana Beach, CA 92075
(858) 793-9104  FAX (858) 793-9112

To:  Single Point Construction, LLC
3729 Brightseat Road
Landover, MD 20785
Contact: Jim Douglas
Phone  301-322-1056
Fax:   301-322-1057

Project: Zara
1025 F Street
Washington, DC
Job Phone: 619-944-9458
Superintendent: Rick Lowrey
DCC Project #: 07-033

This Subcontract Agreement, made on April 6, 2007, and between Dickinson Cameron Construction Company, Inc., hereinafter called the Contractor, and Single Point Construction, LLC, hereinafter called the Subcontractor, covenant and agree with the other as follows:

The Subcontractor agrees to furnish all labor, materials, scaffolding, tools, equipment, contiguous accessories, installations, services, cartage, hoisting, licenses, permits, insurance, inspections and all other requisites required to complete in place, to the full extent that the Contractor is obliged to do so in accordance with the drawings, specifications, and other contract documents described hereunder, including all addenda thereto, all hard and soft demolition per the plans to Addendum 2. Including breaking, shoring, excavation and removal of spoils.

The Contractor agrees to pay Subcontractor, for the full performance of the work hereunder, in current funds, subject to additions and deductions for changes in the work as provided for herein, the sum of:

Forty Four Thousand Five Hundred Twenty and 00/100 DOLLARS    $ 44,520.00

The General Subcontractor Provisions #1 through #25 and the Description of Contract Documents, attached to this agreement, are incorporated herein by this reference and are an integral part of this agreement and shall be deemed a part hereof. PAYMENT: Providing satisfactory progress is being made in the execution of this contract, partial payments will be made in accordance therewith as payments are made by the Owner. Contractor requires that Subcontractor provide his tax identification number, contractors number and expiration date, all required certificates of insurance and / or any bonds in limits and by underwriters acceptable to Contractor, written application for payment in original form (no facsimile), and any appropriate conditional and unconditional lien waivers as they may apply, prior to any payments being made. Subcontractor shall provide conditional lien waivers covering its applications for progress payments as well as a notarized unconditional waiver and release for all services previously paid for by owner. Full, final and notarized unconditional lien waivers are required for final payment. Subcontractor must make applications for payment on or before the 25th of each month for subsequent payment on or about 30 to 45 days thereafter. Ten percent of corrected invoice amount will be retained until final payment. Subcontractor is required to hold safety meetings upon start of work and every ten days thereafter to review Subcontractor's safety program and alert workers of job hazards as required by OSHA and S.B. 198. Copies of minutes, signed by Subcontractor's attending employees, must be received by this office along with your payment requests. Payment may be withheld if safety meeting minutes are not received in a timely manner.

Contractor: Dickinson Cameron Construction Co., Inc.    Subcontractor: Single Point Construction, LLC

Authorized Signature: _____ Michael Iovino, Project Manager
Date: 4/6/07

Authorized Signature: _____
Date: 4/10/07

PLEASE SIGN AND RETURN ONE COPY OF THIS CONTRACT

# SUBCONTRACT AGREEMENT
## DICKINSON CAMERON CONSTRUCTION COMPANY, INC.
140 Lomas Santa Fe Drive, Suite 200
Solana Beach, CA 92075
(858) 793-9104   FAX (858) 793-9112

To:   Single Point Construction, LLC
      3729 Brightseat Road
      Landover, MD 20785
Contact: Jim Douglas
Phone:   301-322-1056
Fax:     301-322-1057

Project: Zara
         1025 F Street
         Washington, DC
Job Phone: 619-944-9458
Superintendent: Rick Lowrey
DCC Project #: 07-033

This Subcontract Agreement, made on April 6, 2007, and between Dickinson Cameron Construction Company, Inc., hereinafter called the Contractor, and Single Point Construction, LLC, hereinafter called the Subcontractor, covenant and agree with the other as follows:

The Subcontractor agrees to furnish all labor, materials, scaffolding, tools, equipment, contiguous accessories, installations, services, cartage, hoisting, licenses, permits, insurance, inspections and all other requisites required to complete in place, to the full extent that the Contractor is obliged to do so in accordance with the drawings, specifications, and other contract documents described hereunder, including all addenda thereto, all labor to perform steel work including design, fabrication, placement and erection of steel and handrail per the plans to Addendum 2.

The Contractor agrees to pay Subcontractor, for the full performance of the work hereunder, in current funds, subject to additions and deductions for changes in the work as provided for herein, the sum of:

Eight Five Thousand and 00/100 DOLLARS                            $ 85,000.00

The General Subcontractor Provisions #1 through #25 and the Description of Contract Documents, attached to this agreement, are incorporated herein by this reference and are an integral part of this agreement and shall be deemed a part hereof. PAYMENT: Providing satisfactory progress is being made in the execution of this contract, partial payments will be made in accordance therewith as payments are made by the Owner. Contractor requires that Subcontractor provide his tax identification number, contractors number and expiration date, all required certificates of insurance and / or any bonds in limits and by underwriters acceptable to Contractor, written application for payment in original form (no facsimile), and any appropriate conditional and unconditional lien waivers as they may apply, prior to any payments being made. Subcontractor shall provide conditional lien waivers covering its applications for progress payments as well as a notarized unconditional waiver and release for all services previously paid for by owner. Full, final and notarized unconditional lien waivers are required for final payment. Subcontractor must make applications for payment on or before the 25th of each month for subsequent payment on or about 30 to 45 days thereafter. Ten percent of corrected invoice amount will be retained until final payment. Subcontractor is required to hold safety meetings upon start of work and every ten days thereafter to review Subcontractor's safety program and alert workers of job hazards as required by OSHA and S.B. 198. Copies of minutes, signed by Subcontractor's attending employees, must be received by this office along with your payment requests. Payment may be withheld if safety meeting minutes are not received in a timely manner.

Contractor: Dickinson Cameron Construction Co., Inc.   Subcontractor: Single Point Construction, LLC
Authorized Signature: [signed] Michael Marino, Project Manager
Date: 4/6/07
Authorized Signature: [signed]
Date: 4/10/07

PLEASE SIGN AND RETURN ONE COPY OF THIS CONTRACT

# SUBCONTRACT AGREEMENT

## DICKINSON CAMERON CONSTRUCTION COMPANY, INC.

140 Lomas Santa Fe Drive, Suite 200
Solana Beach, CA 92075
(858) 793-9104   FAX (858) 793-9112

| | |
|---|---|
| To: Single Point Construction, LLC<br>3729 Brightseat Road<br>Landover, MD 20785<br>Contact: Jim Douglas<br>Phone  301-322-1056<br>Fax:     301-322-1057 | Project: Zara<br>1025 F Street<br>Washington, DC<br>Job Phone:619-944-9458<br>Superintendent: Rick Lowrey<br>DCC Project #: 07-033 |

This Subcontract Agreement, made on April 6, 2007, and between Dickinson Cameron Construction Company, Inc., hereinafter called the Contractor, and Single Point Construction, LLC, hereinafter called the Subcontractor, covenant and agree with the other as follows:

The Subcontractor agrees to furnish all labor, materials, scaffolding, tools, equipment, contiguous accessories, installations, services, cartage, hoisting, licenses, permits, insurance, inspections and all other requisites required to complete in place, to the full extent that the Contractor is obliged to do so in accordance with the drawings, specifications, and other contract documents described hereunder, including all addenda thereto, all furnish material including steel and handrail per the plans to Addendum 2. To the best of Single Point's ability these materials will be purchaded from a DC authorized LSDBE supplier. Proof of which must be submitted with payment requests.

The Contractor agrees to pay Subcontractor, for the full performance of the work hereunder, in current funds, subject to additions and deductions for changes in the work as provided for herein, the sum of:

**Fifty Thousand and 00/100  DOLLARS**                                          **$ 50,000.00**

The General Subcontractor Provisions #1 through #25 and the Description of Contract Documents, attached to this agreement, are incorporated herein by this reference and are an integral part of this agreement and shall be deemed a part hereof. PAYMENT: Providing satisfactory progress is being made in the execution of this contract, partial payments will be made in accordance therewith as payments are made by the Owner. Contractor requires that Subcontractor provide his tax identification number, contractors number and expiration date, all required certificates of insurance and / or any bonds in limits and by underwriters acceptable to Contractor, written application for payment in original form (no facsimile), and any appropriate conditional and unconditional lien waivers as they may apply, prior to any payments being made.. Subcontractor shall provide conditional lien waivers covering its applications for progress payments as well as a notarized unconditional waiver and release for all services previously paid for by owner. Full, final and notarized unconditional lien waivers are required for final payment. Subcontractor must make applications for payment on or before the 25th of each month for subsequent payment on or about 30 to 45 days thereafter. Ten percent of corrected invoice amount will be retained until final payment. Subcontractor is required to hold safety meetings upon start of work and every ten days thereafter to review Subcontractor's safety program and alert workers of job hazards as required by OSHA and S.B. 198. Copies of minutes, signed by Subcontractor's attending employees, must be received by this office along with your payment requests. Payment may be withheld if safety meeting minutes are not received in a timely manner.

| | | | |
|---|---|---|---|
| Contractor: | Dickinson Cameron Construction Co., Inc. | Subcontractor: | Single Point Construction, LLC |
| Authorized Signature: | *[signature]*<br>Michael loving, Project Manager | Authorized Signature: | *[signature]* |
| Date: | 4/6/07 | Date: | 4/10/07 |

**PLEASE SIGN AND RETURN ONE COPY OF THIS CONTRACT**

10/19/2007 14:28 FAX 202 638 0303   DOUGLAS DEVELOPMENT CORP   ☒011/015

# SUBCONTRACT AGREEMENT

## DICKINSON CAMERON CONSTRUCTION COMPANY, INC.

140 Lomas Santa Fe Drive, Suite 200
Solana Beach, CA 92075
(858) 793-9104   FAX (858) 793-9112

To: Single Point Construction, LLC
3729 Brightseat Road
Landover, MD 20785
Contact: Jim Douglas
Phone: 301-322-1056
Fax: 301-322-1057

Project: Zara
1025 F Street
Washington, DC
Job Phone: 619-944-9458
Superintendent: Rick Lowrey
DCC Project #: 07-033

This Subcontract Agreement, made on April 6, 2007, and between Dickinson Cameron Construction Company, Inc., hereinafter called the Contractor, and Single Point Construction, LLC, hereinafter called the Subcontractor, covenant and agree with the other as follows:

The Subcontractor agrees to furnish all labor, materials, scaffolding, tools, equipment, contiguous accessories, installations, services, cartage, hoisting, licenses, permits, insurance, inspections and all other requisites required to complete in place, to the full extent that the Contractor is obliged to do so in accordance with the drawings, specifications, and other contract documents described hereunder, including all addenda thereto, all concrete and placement per the plans to Addendum 2.

The Contractor agrees to pay Subcontractor, for the full performance of the work hereunder, in current funds, subject to additions and deductions for changes in the work as provided for herein, the sum of:

Sixteen Thousand Eight Hundred Seventy Five and 00/100 DOLLARS   $ 16,875.00

The General Subcontractor Provisions #1 through #25 and the Description of Contract Documents, attached to this agreement, are incorporated herein by this reference and are an integral part of this agreement and shall be deemed a part hereof. PAYMENT: Providing satisfactory progress is being made in the execution of this contract, partial payments will be made in accordance therewith as payments are made by the Owner. Contractor requires that Subcontractor provide his tax identification number, contractors number and expiration date, all required certificates of insurance and / or any bonds in limits and by underwriters acceptable to Contractor, written application for payment in original form (no facsimile), and any appropriate conditional and unconditional lien waivers as they may apply, prior to any payments being made. Subcontractor shall provide conditional lien waivers covering its applications for progress payments as well as a notarized unconditional waiver and release for all services previously paid for by owner. Full, final and notarized unconditional lien waivers are required for final payment. Subcontractor must make applications for payment on or before the 25th of each month for subsequent payment on or about 30 to 45 days thereafter. Ten percent of corrected invoice amount will be retained until final payment. Subcontractor is required to hold safety meetings upon start of work and every ten days thereafter to review Subcontractor's safety program and alert workers of job hazards as required by OSHA and S.B. 198. Copies of minutes, signed by Subcontractor's attending employees, must be received by this office along with your payment requests. Payment may be withheld if safety meeting minutes are not received in a timely manner.

Contractor: Dickinson Cameron Construction Co., Inc.
Authorized Signature: [signature]
Michael Iovino, Project Manager
Date: 4/6/07

Subcontractor: Single Point Construction, LLC
Authorized Signature: [signature]
Date: 4/10/07

PLEASE SIGN AND RETURN ONE COPY OF THIS CONTRACT

## GENERAL SUBCONTRACTOR PROVISIONS

**Article 1.**

It is understood and agreed that the execution of this contract by the Subcontractor shall be taken as prima facie evidence that he has fully acquainted himself with conditions relating to construction and labor at the site and that he fully understands the facilities, difficulties and restrictions attending the execution of the work thereunder.

Subcontractor certifies and agrees that he is fully familiar with all the terms, conditions and obligations of the Contract Documents, as herein specifically defined, the location of the job site and the conditions under which the work is to be performed, and that he enters into this agreement based upon his own investigation of all such matters and is in no way relying upon any opinions or representations of the Contractor. Copies of said Contract Documents shall be kept on file in the office of the Contractor for reference by the parties hereto. It is agreed that the Subcontractor assumes, for the work covered by this agreement, to the full extent thereof, all obligations and responsibilities placed upon the Contractor by the aforesaid contract documents, which the Contractor has assumed toward the Owner. The Subcontractor further agrees to be bound to the Contractor by the architects interpretations of his drawings, specifications and addenda.

**Article 2.**

It is understood and agreed that the schedules, if any are hereto attached, are included in and constitues a part of this contract. The Subcontractor agrees to commence work at the site and elsewhere as soon as directed by the Contractor. The Subcontractor shall prosecute his work with promptness and diligence and shall complete the several parts and the whole herein sublet in accordance with progress schedules as may be prepared and issued to the Subcontractor at any time by the Contractor. It being mutually understood and agreed that time is of the essence of this contract, the Subcontractor shall at all times have a sufficient number of workers, materials and equipment at the job, so that, to the satisfaction of the Contractor, the work may be carried out and completed as rapidly as required by the Contractor.

It is understood and agreed that said progress schedules are based on reasonable expectation that the condition of the project will be such as will permit the Subcontractor to perform as therein provided, and they may accordingly be changed from time to time. If this is not the case and Subcontractor shall be delayed in the commencement, prosecution or completion of this work by reason thereof, or by reason of other cause beyond his control and without his fault or negligence, the schedules herein above for completion of the work may be extended by such time as shall be fixed by the Contractor, but no such extension shall be made unless a claim stating a basis of thereof is presented in writing to the Contractor within three (3) days of the start of such delay, and agreed to by the Contractor.

No such extension shall be deemed a waiver of his right to terminate this contract for cause as herein provided or relieve the Subcontractor from full responsibility for performance of his obligations hereto, and no such delay shall give rise to any right to the Subcontractor to claim damages therefore from the Contractor. Contractor shall not be liable for any damages that may occur from delays or other causes on the part of other Contractors, Subcontractors, or suppliers involved in the work, or the furnishing of materials pertaining to this project.

It is understood and agreed that if the Subcontractor fails to commence or complete his work, or any part thereof as herein prescribed, and said failure causes the Contractor to incur actual and/or liquidated damages, the Subcontractor shall pay the cost thereof.

**Article 3.**

Prior to commencing the work, Subcontractor shall furnish Contractor with a certificate(s) of insurance, executed by a duly authorized representative of each insurer, showing compliance with the insurance requirements set forth below. All certificates shall provide for 30 days written notice to Contractor prior to the cancellation (or material change) of any insurance referred to herein. The words "endeavor to" and "but failure to mail such notice shall impose no obligation or liability of any kind upon the company, its agents or representatives" shall be deleted from the certificate form's cancellation provision. Failure of Contractor to demand such certificate or other evidence of full compliance with these insurance requirements or failure of Contractor to identify a deficiency from evidence that is provided shall not be construed as a waiver of Subcontractor's obligation to maintain such insurance. Contractor shall have the right, but not the obligation, of prohibiting Subcontractor or any Subcontractor from entering the project site until such certificates or other evidence that insurance has been placed in complete compliance with these requirements is received and approved by Contractor. Failure to maintain the required insurance may result in termination of this contract at Contractor's option. If Subcontractor fails to maintain the insurance as set forth herein, Contractor shall have the right, but not the obligation, to purchase said insurance at Subcontractor's expense. By requiring insurance herein, Contractor does not represent that coverage and limits will necessarily be adequate to protect Subcontractor, and such coverage and limits shall not be deemed as a limitation on Subcontractor's liability under the indemnities granted to Contractor in this contract. If Contractors' liability policies do not contain the standard ISO separation of insureds provision, or a substantially similar clause, they shall be endorsed to provide cross-liability coverage. Subcontractor shall cause each Subcontractor employed by Subcontractor to purchase and maintain insurance of the type specified above. When requested by Contractor, Subcontractor shall furnish copies of certificates of insurance evidencing coverage for each Subcontractor.

Subcontractor shall obtain insurance of the types and in the amounts described below.

Subcontractor shall maintain commercial general liability (CGL) and, if necessary, commercial umbrella insurance with a limit of not less than $1,000,000 each occurrence. If such CGL insurance contains a general aggregate limit, it shall apply separately to this project as evidenced by Endorsement CG 25 03 or equivalent. CGL insurance shall be written on an ISO occurrence form CG 00 01 07 98 (or a substitute form providing equivalent coverage) and shall cover liability arising from premises, operations, independent contractors, products/completed operations, personal injury and advertising injury, and liability assumed under an insured contract (including the tort liability of another assumed in a business contract). Contractor shall be included as an insured under the CGL, using ISO additional insured endorsement CG 20 10 11 85 or its equivalent, which endorsement shall include coverage for Contractor with respect to liability arising out of the completed operations of Subcontractor, and which coverage shall be maintained in effect for the benefit of Contractor for a period of one year following the completion of the work specified in Section One of this contract. Additional insured coverage as required in the subparagraph shall apply as primary insurance with respect to any other insurance or self-insurance programs afforded to Contractor.

Subcontractor shall maintain business auto liability and, if necessary, commercial umbrella liability insurance with a limit of not less than $1,000,000 each accident. Such insurance shall cover liability arising out of any auto (including owned, hired, and non-owned autos). Business auto coverage shall be written on ISO form CA 00 01, or a substitute form providing equivalent liability coverage. If necessary, the policy shall be endorsed to provide contractual liability coverage equivalent to that provided in the 1990 and later editions of CA 00 01.

Subcontractor shall maintain workers compensation and employers liability insurance The commercial umbrella and/or employers liability limits shall not be less than $1,000,000 each accident for bodily injury by accident or $1,000,000 each employee for bodily injury by disease.

**Article 4.**

Subcontractor will be allowed no additional cost without proper approval via Dickinson Cameron Construction Co., Inc. work authorization. No additional costs will be allowed if additional costs result from the acts of others beyond the control of Contractor. Subcontractor will perform, without delay, all his work pertaining to the project in accordance with the contract documents.

It is understood and agreed that the Contractor, without in any way invalidating this contract, shall have the right to make contemplated and/or actual changes, additions and/or omissions in the work, upon written order to the Subcontractor. The Subcontractor shall then promptly submit an itemized estimate, in a detailed breakdown form listing all quantities and associated unit costs of the value of the work involved and shall, if so directed by the Contractor, proceed diligently to prosecute the work so ordered. Upon determination, by the Contractor, of the value of the work involved, the Contractor will issue a Change Order to the Subcontractor, adjusting the contract sum accordingly.

The hourly wage rates, per trade classification, Subcontractor may charge for changes and extra work may be verified and determined based on review of Subcontractors certified payroll documents. Back-up information from material supplies and below tier Subcontractors and vendors may also be requested.

Subcontractors are entitled to a total markup not to exceed 10% for additions of material and labor provided for change order time and material work.

Article 5.

In the event of Subcontractor's failure of performance, the Contractor may take over the work, after a 24 hour written notice, and complete the work or have the same completed at Subcontractor's expense.

Article 6.

The Subcontractor agrees that if at any time there shall be evidence of any lien or any other claim of any kind or description for which the Contractor may become liable, and which is chargeable to the Subcontractor, or any other subcontractor of his, and/or when damage shall be caused by this Subcontractor to the work of the Contractor, or any other contractor or subcontractor, the Subcontractor shall promptly discharge or relieve such lien and/or claim by bonding, payment or otherwise, and in case of the failure of the Subcontractor to so discharge such lien and/or claim, the Contractor shall have the right, in addition to any other right afforded him under the contract, to retain out of any payment then due or thereafter to become due and amount sufficient in the opinion of the Contractor to completely indemnify the Contractor against any such lien or claim.

Article 7.

The Subcontractor shall defend all suits or claims for infringement by him of any patent rights that may be brought against the Contractor and/or the Owner arising out of the work contemplated by this agreement, he shall save the Contractor and/or the Owner harmless from any loss, cost or damage that either of them may suffer on account thereof.

The Subcontractor shall pay all royalties and shall procure and pay for all licenses and permits pertaining to this work.

Article 8.

It is agreed that the Subcontractor will take all proper precautions to prevent accidents or damage to persons and property on, about or adjacent to the project premises, and he will erect and properly maintain all necessary safeguards and danger signs in connection with his work. Subcontractor shall comply with all OSHA regulations and SB 198 concerning safety issues and programs.

Article 9.

Subcontractor [Lessee, Vendor] waives all rights against Contractor and its agents, officers, directors and employees for recovery of damages to the extent these damages are covered by the business auto liability or commercial umbrella liability insurance obtained by Subcontractor [or under any applicable auto physical damage coverage].

Subcontractor waives all rights against Contractor and its agents, officers, directors and employees for recovery of damages to the extent these damages are covered by the workers compensation and employers liability or commercial umbrella liability insurance obtained by Subcontractor.

Article 10.

To the end that work may not be interrupted by labor disputes, the Subcontractor shall employ such labor as, to the satisfaction of the Contractor, will work in harmony with other trades upon the project. Contractor may require Subcontractor to dismiss any workman or workmen or others employed on work whom Contractor may deem incompetent, improper, or a hindrance to progress of any work on the project, whereupon any such workmen or workmen shall be discharged and when so discharged, shall not again be employed on any part of the work without written consent of the Contractor.

This Subcontractor agrees to comply with the Procedural Rules and Regulations of the National Joint Board for Settlement of Jurisdictional Disputes of the Building and Construction Industry, and/or its successors; and to immediately accept and comply with any decision and/or interpretation rendered by said Board.

In connection with the performance of work under this contract, the Subcontractor agrees not to discriminate against any employee or applicant for employment because of race, religion, color or national origin. The aforesaid provision shall include, but not be limited to, the following: employment, upgrading, demotion or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship.

Article 11.

The Subcontractor agrees to pay for utilities used directly for the benefit of the Subcontractor during the progress of construction.

Article 12.

During the progress of construction, the Contractor may install a material hoist or one or more of the permanent elevators for use in hoisting lighter materials. If the Subcontractor uses such hoist or elevators, he agrees to pay for same an amount set up by the Contractor.

Article 13.

It is understood and agreed that all work, equipment and materials furnished and erected hereto shall be in strict conformity with the "Law". The "Law" shall include all applicable laws, codes, ordinances, rules, regulations and requirements of Federal, State, County and Municipal authorities, and the National Board of Fire Underwriters, and any local fire insurance exchange. Should the Contract Documents conflict with the "Law", the Subcontractor shall perform the work required by "Law" at no additional cost. Should the documents require more that the "Law" requires, the Contract Documents shall be followed.

Article 14.

The Subcontractor agrees that upon receipt of the agreement executed by the Contractor, he will forthwith submit to the Contractor for approval, within ten (10) days of the date hereof, or earlier as required to comply with the Progress Schedule, the following:

10/19/2007 14:30 FAX   202 638 0303         DOUGLAS DEVELOPMENT CORP                    ☒014/015

(a) All shop drawings and samples of materials complete with full information concerning the materials and articles which he contemplates incorporating into the work.

(b) A full list of material and equipment that he proposes to use, together with all required cuts, illustrations, catalogues or other explanatory and descriptive data that will assist in the securing of prompt approval, so there will be no delay in the placing of orders. The Subcontractor will furnish the names of manufacturers of equipment and materials which he contemplates incorporating in the work, together with their performance capacities and other pertinent information.

(c) It is understood that the approval of the Subcontractor's submittals is a general approval and shall not excuse errors, discrepancies or omissions. No equipment or materials shall be installed or used without such approval.

(d) It is understood and agreed that the Subcontractor shall be solely liable for all costs to others which may result from any item, submitted by the Subcontractor, which varies from, but is approved as equal to, the specified requirements for said item.

Article 15.

The Contractor will furnish to the Subcontractor one complete set of drawings, specifications and addenda. Additional copies will be charged to the account of the Subcontractor, if charged by the Owner or Architect.

It is understood and agreed that anything mentioned in the specifications and not shown on the drawings or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both. In case of any discrepancy in the figures, drawings or specifications, the matter shall be immediately submitted to the Contractor without whose decision said discrepancy shall not be adjusted by the Subcontractor, save only at his own risk and expense. The Contractor will furnish to the Subcontractor additional information and drawings, as may be prepared by the Architect, to further describe the work to be performed by the Subcontractor, who shall accept the same as part of this agreement when substantially in accordance with the Contract Documents.

Article 16.

It is understood and agreed that the Subcontractor will do no work in weather which, in the opinion of the Contractor, is unsuitable; that the work will be done under the direction of the Contractor; that all matters shall be subject to inspection, examination and test by the Architect and/or Contractor at any and all times during manufacture and/or construction and at any and all places where such manufacture and/or construction is carried on; that should the Subcontractor furnish any work, materials or equipment which are not in strict conformity herewith, the Contractor may either require such work to be taken down and removed from the premises, at the Subcontractor's expense, in which case the Subcontractor will immediately replace said work or materials with work, materials or equipment in strict conformity herewith, or the Contractor may decide that such removal is inexpedient and allow such work or materials to remain, whereupon the Contractor shall have the right to accept such work and materials and to deduct from any sums then or thereafter due the Subcontractor and amount which, in the opinion of the Contractor, shall be equivalent to the difference in value between the work, materials or equipment, the Contractor may, by adopting any method he may deem expedient, replace such work, materials, or equipment and charge the costs thereof to the Subcontractor.

Article 17.

It is understood and agreed that the Subcontractor will forward to the Contractor as required by the Contractor, a summary report of the progress of the various parts of the work under this contract in the mills or shops and in the field, stating the existing status, rate of progress, estimated time of completion, and cause of delay, if any.

Article 18.

The Subcontractor shall be represented on the job site, during the course of his work by a qualified supervisor acceptable to the Contractor.

It is understood and agreed that the Subcontractor, or a responsible representative of his, duly authorized to act in his place and stead, will attend progress meetings, the date, hour and place of which will be established by the Contractor.

Article 19.

It is understood and agreed that the Subcontractor will, during the progress of the work and as directed by the Contractor, remove from the project at his own expense, the dirt and debris resulting from his operation. Upon completion of this work, he shall remove from the project all equipment and unused materials and leave the premises in a condition satisfactory to the Contractor. If subcontractor fails to do same, as deemed acceptable by the Contractor, Contractor may complete the work and charge Subcontractors account for all related material and equipment costs plus a fifty percent (50%) fee. Note: Basic labor rates will start at Fifty Dollars ($50.00) per hour.

Article 20.

It is understood and agreed that if the Subcontractor should be adjudged bankrupt, or if he should make a general assignment for the benefit of his creditors, or if a receiver should be appointed of Subcontractor, or if he should refuse or fail to supply enough properly skilled workmen or proper materials, or if he should fail to make prompt payment for material or labor, or disregard laws, ordinances or the instructions of the Contractor, or otherwise be guilty of violation of any provision of this contract, in the opinion of the Contractor, then the Contractor may, without prejudice to any other right or remedy and after giving the Subcontractor 24 hours written notice, terminate this Agreement and take possession of the premises and of all materials, tools and equipment thereon and finish the work herein contemplated by whatever method he may deem expedient. In such case the Subcontractor shall not be entitled to receive any further payment until the work is finished. If the unpaid balance of the contract sum shall exceed the expense of finishing the work, including compensation for additional managerial and administrative services, such excess shall be paid to the Subcontractor. If such expense shall exceed such unpaid balance, the Subcontractor shall pay the difference to the Contractor.

Article 21.

The Subcontractor agrees to cooperate fully with all other contractors and/or subcontractors performing work on the project and to carefully fit his own work to that provided for under such contracts and/or subcontracts as may be directed by the Contractor. The Subcontractor shall not commit or permit any act and/or omission which will interfere with the performance of work by any other contractor or subcontractor.

Article 22.

Subcontractor agrees that he will not sublet, or assign, transfer this Contract or any part thereof, or any interest therein, or any moneys due thereunder, without first obtaining the written consent of the Contractor. Any work so sublet, assigned or transferred or any transfer of any interest or any moneys due hereunder shall be subject to all the provisions herein and such subletting, assignment or transfer shall not relieve the Subcontractor, his assignee or transferee of any of the responsibilities required by this Contract.

Article 23.

It is understood and agreed that no certificate, receipt, or payment made for work executed, materials, or equipment furnished, shall constitute an acceptance of any such work, materials or equipment that may subsequently be found to be defective nor relieve the Subcontractor of responsibility for such faulty materials, equipment or workmanship and, unless otherwise specified, he shall remedy any defects due thereto and pay for any

10/19/2007 14:31 FAX  202 638 0303         DOUGLAS DEVELOPMENT CORP                    @015/015

damage to other work and/or other real or personal property resulting therefrom, which shall appear within a period of one year from completion and acceptance of the work, by the Owner, or such longer time as may be prescribed in the Specifications.

The Subcontractor further agrees that no such certificate, receipt of payment shall impair or in any way prejudice any right of action the Contractor may have against him should he fail in or omit the performance of any part of this Contract and no waiver by the Contractor of any one or more of these rights or remedies under the contract shall be, or for any purpose deemed to be, a waiver of any prior or subsequent right or remedy of the Contractor.

Article 24.

In the event of the Owner's approval of the Subcontractor is required by the Contract Documents, this Agreement is contingent upon said approval.

Article 25.

In the event arbitration, legal or equitable action involving Contractor and the Owner under any provision of the Contract Documents are herein above defined, which involves work performed under this Subcontract, the Subcontractor agrees that the Contractor shall have the right to select counsel of its own choosing in representing the Contractor and the Subcontractor's interest as they may appear, in any such arbitration or legal or equitable action; and the Subcontractor further agrees to pay its pro tanto share of the costs, including legal fees of such counsel aforesaid, of such arbitration or legal or equitable proceedings, such costs to be determined on the basis of the percentage of interest in the recovery of loss which the Subcontractor may obtain or suffer, in said arbitration or legal or equitable proceedings.